KEYSTONE CONSOLIDATED INDUSTRIES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Keystone Consol. Industries, Inc. v. Commissioner
Docket No. 4657-89.
United States Tax Court
T.C. Memo 1990-628; 1990 Tax Ct. Memo LEXIS 698; 60 T.C.M. (CCH) 1423; 13 Employee Benefits Cas. (BNA) 1058; T.C.M. (RIA) 90628; December 13, 1990, Filed Raymond P. Wexler and Todd F. Maynes, for the petitioner. James S. Stanis and David Albert Mustone, for the respondent. *700 HAMBLEN, Judge. HAMBLEN
*2050 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent issued a notice of deficiency to petitioner for excise taxes for fiscal years (ending June 30) 1983, 1984, 1985, 1986, 1987, and 1988. The notice of deficiency determined that two transfers of property by petitioner to its employees' pension plan, in satisfaction of petitioner's funding obligations, were prohibited transactions under section 4975. [1] Petitioner timely filed its petition contesting the deficiency. This matter now comes before the Court on petitioner's motion for summary judgment. Respondent has submitted a cross-motion for summary judgment in his favor. The sole issue for determination is whether petitioner's transfer of unencumbered property to a pension plan, established for the benefit of petitioner's employees, in satisfaction of petitioner's minimum funding obligations, constitutes a sale or exchange within the meaning of section 4975. *701 FINDINGS OF FACT The following facts have been stipulated to by the parties. The attached exhibits are incorporated herein by this reference. Keystone Consolidated Industries, Inc., (hereinafter petitioner) is incorporated under the laws of the State of Delaware. Petitioner's principal office is in Dallas, Texas. *2051 During the taxable years ending June 30, 1983 through June 30, 1988, petitioner maintained several tax-qualified defined benefit plans. Petitioner funded these plans through contributions to the Keystone Consolidated Master Pension Trust (hereinafter the Trust). On March 8, 1983, petitioner contributed to the Trust five truck terminals (hereinafter the truck terminals) having a fair market value of $ 9,655,454. Petitioner credited the fair market value of the truck terminals against its minimum funding obligations of the employees' defined benefit plans for the taxable years ending June 30, 1982 and 1983. On March 13, 1984, petitioner contributed to the Trust real property (hereinafter the Key West property) having a fair market value of $ 5,336,751. Petitioner credited the fair market value of the Key West property against its minimum funding *702 obligations of the employees' defined benefit plans for the taxable year ending June 30, 1984. The truck terminals and Key West property transferred from petitioner to the trust were not encumbered or subject to any mortgage at the time of the transfer. Further, the truck terminals and the Key West property were never leased back to petitioner or any "affiliate" of petitioner. Petitioner reported these transactions on its income tax returns, taking a deduction in the amount of the fair market value of the property transferred as a contribution to the plan under section 412, and recognizing the difference between the cost of such property and its fair market value as taxable capital gain. On December 14, 1988, respondent issued a notice of deficiency for excise taxes against petitioner for the fiscal taxable years ending June 30 for 1983, 1984, 1985, 1986, 1987, and 1988. Respondent determined excise taxes owing in the amount of $ 749,610 for the fiscal year ending June 30, 1984 and $ 482,773 for each of the other taxable fiscal years at issue. Further, respondent determined an additional excise tax owing for the taxable fiscal year ending June 30, 1988 in the amount of $ 9,655,454. *703 Petitioner timely filed a petition contesting the determined deficiencies on March 9, 1989. OPINION Both respondent and petitioner agree that there are no genuine issues of material fact before the Court in this case. Therefore, judgment on the substantive issue as a matter of law is appropriate. Rule 121(b). See ; . Respondent's contention for the determined deficiencies is that property transferred by petitioner to its employees' pension plan in satisfaction of petitioner's funding obligations constitutes a prohibited transaction under section 4975. Respondent does not contest the value set forth by petitioner of the truck terminals or of the Key West property. Therefore, the sole issue before us is whether the transfer of unencumbered property by an employer to a defined benefit plan, maintained for the benefit of its employees, in satisfaction of the employer's minimum funding requirements, is a prohibited transaction when the employer does not retain, directly or indirectly, any control over the transferred property. Section 4975(a) imposes *704 on "prohibited transactions" an annual five percent tax on the amount involved for each prohibited transaction" (the "first-tier" tax). The tax imposed is to be paid by any "disqualified person" who participates in the prohibited transaction. Additionally, section 4975(b) imposes a 100 percent tax on any "prohibited transaction" not corrected within the statutory period (the "second-tier" tax). Section 4975(c)(1)(A) defines "prohibited transaction," in part, as any "sale or exchange," or leasing, of any property between a "plan" and a "disqualified person." Section 4975(e)(2)(C) defines a "disqualified person," in part, as an employer, any of whose employees are covered by the "plan." Section 4975(e)(1) sets forth that a trust forming a part of a plan constitutes a "plan" for purposes of section 4975. Therefore, for our purposes, the tax imposed by section 4975(a) must be paid by any employer who enters into a sale or exchange, or lease, with any plan that covers some of the employer's employees. Petitioner acknowledges that it is a disqualified person with respect to the Trust. Petitioner further acknowledges that the Trust qualifies as a plan under section 4975. Consequently, *705 we must determine only whether the transfers are sales or exchanges pursuant to section 4975(c)(1)(A), and, as such, prohibited. Respondent argues that petitioner's transfer of unencumbered property to the Trust in satisfaction of its minimum funding obligations constitutes a sale or exchange for purposes of section 4975. Respondent further asserts that this Court should broadly construe the term "sale or exchange" in order to prevent potential abuse. While we agree with respondent that there is a potential for abuse by allowing unencumbered property transfers to plans in satisfaction of minimum funding requirements, we do not agree that the transfer in this case constitutes a sale or exchange under section 4975. First, respondent attempts to analogize the property transfer to the recognition of income *2052 for income tax purposes. Respondent cites authority relating to the recognition of gain on the transfer for income tax purposes and makes the analogy that the same treatment should be afforded in the area of contributions to pension plans. However, the issue of whether a transfer to a pension plan is a prohibited transaction under section 4975 is separate and distinct *706 from income tax recognition. Further, detailed definitions of a sale or exchange for purposes of the prohibited transaction rules should be applied in lieu of general definitions found in other areas of the tax law. See, e.g., (quoting , affd. . Since section 4975(f)(3) specifically describes certain transfers of real or personal property to a plan by a disqualified person as a sale or exchange for purposes of section 4975, the definitional concerns of "sale or exchange" are removed from the general definitions found in other areas of the tax law. See . Therefore, we do not find respondent's analogy appropriate or persuasive. Second, respondent contends that employers could transfer "bad" or "illiquid" investments to the plan, thereby hurting the plan's rate of return and investment policies. However, it is the fair market value of the asset at the time of the transfer that controls for valuation purposes. "Bad" or "illiquid" *707 assets would, at least in some part, be reflected by a lower fair market value. Further, respondent has ample opportunity to contest the value of the asset at the time of transfer. Respondent makes no such contention in the present case. Once the asset is transferred, the trustee of the plan must make its independent judgment as to how to treat the asset. If the asset is truly a poor investment, the trustee, acting under its fiduciary capacity, can dispose of it. We do find merit in respondent's argument that the employer can save costs related to the sale of the asset by transferring it into a plan, rather than selling it outright. However, this potential for abuse is better addressed by Congress. If Congress intended to prevent unencumbered property from being transferred into a plan in satisfaction of the employer's minimum funding requirements, it would have included unencumbered property in section 4975(f)(3). [2] Respondent's contention that Congress intended transfers of unencumbered property to be prohibited transactions is inconsistent with section 4975(f)(3) which specifies only transfers of encumbered property as a prohibited transaction. In construing the terms of *708 section 4975 "* * * in harmony with the legislative purpose" as respondent suggests (citing , it is clear that the Code, and the legislative intent behind it, does not support respondent's determination that petitioner's transfer of unencumbered property to its plan in satisfaction of its funding obligation is a prohibited transaction.
Next, respondent argues that Congress intended to allow unencumbered property to be transferred to a plan only when the transfer was voluntary (i.e., not in satisfaction of the minimum funding requirements of section 412). Respondent further argues that the Code should be read to limit all *709 transfers of property, including unencumbered property, if it satisfies any of the employer's minimum funding obligations. We do not agree. Nothing in section 4975, or related sections, even hints that Congress made a distinction between voluntary and mandatory contributions as they relate to transfers of unencumbered property. To the contrary, Congress made distinctions relating to transfers of property based on other factors. [3] Further, we draw attention to our recent holding, directly on point, where we found that "Nothing in the provisions * * * persuades us that an unexpressed distinction between voluntary and required contributions should be read into the provisions dealing specifically with qualified pension plans." Wood v. Commissioner, 95 T.C. (Sept. 27, 1990) (slip op. at 10). We have reviewed respondent's other arguments and find them wholly unpersuasive and without merit. We find no persuasive indication that section 4975 was *710 intended by Congress to make a distinction between voluntary and required contributions to pension plans. Further, we find no credible support to suggest that section 4975, or Congress's intent in drafting it, was intended to restrict the transfer of unencumbered property to a plan in satisfaction of an employer's minimum funding requirements. For the foregoing reasons, An appropriate order will be issued. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 4975(f)(3) treats the transfers of encumbered real or personal property by a disqualified person to a plan as a sale or exchange, and thus a prohibited transaction, if the plan assumes the encumbrance or if the encumbrance was placed upon the property by the disqualified person within the last ten years.↩
3. See discussion concerning section 4975(f)(3) supra↩.